

# United States Bankruptcy Court
# for the District of Oregon

**Albert E. Radcliffe, Chief Judge**      151 West Seventh Avenue, Suite 300     (541) 465-6802
Virginia H. Denney, Judicial Assistant           Post Office Box 1335               FAX: (541) 465-6899
Howard J. Newman, Law Clerk                Eugene, Oregon 97440

July 15, 2005

Mr. Kent Anderson
888 West Park Street
Eugene, OR 97401

Mr. Paul Garrick
PO Box 467
Eugene, OR 97440

RE:     MARKINSON, Eric Andrew; Case No. 604-60110-aer13
          Application for Supplemental Compensation: Anderson

Counsel:

      This matter comes before the court on Mr. Anderson's application for supplemental compensation of $6,802.50. The matter was heard on February 16, 2005. After hearing, and based on Mr. Garrick's recommendation, I allowed $2,500 of the applied-for fees as an administrative expense, and disallowed the balance. The disallowed fees were incurred in the debtor's prosecution of multiple claims objections, as set out in detail below. I left open to the debtor the option of voluntarily paying the disallowed balance post discharge. I write now to further explain my oral ruling.

      The underlying facts are largely undisputed. This Chapter 13 bankruptcy was filed on January 9, 2004, through Mr. Anderson's office. Debtor is currently operating under a Chapter 13 plan dated January 9, 2004, confirmed on March 4, 2004. The plan's duration is thirty-six (36) months, and provides for an approximate 16% dividend to general unsecured creditors. Allowance of the attorney's fees at issue would reduce that dividend.

      Debtor scheduled $76,149.15 in general unsecured debt, <u>all</u> of which was listed as undisputed, liquidated and non-contingent. Among those debts were several credit cards. These creditors also filed proofs of claim. The names of these creditors, the scheduled amount of their claims, the creditor's proof of claim amount, and the percentage of the claim amount scheduled as undisputed, are as follows:[1]

---

[1] Bracketed text indicates additional designation as set out in proof of claim.

| Name of Creditor | Scheduled Amount | Claim Amount | % of Claim Scheduled as Undisputed |
|---|---|---|---|
| American Express [Centurion Bank] | $ 9,724.19 | $ 9,983.50 | 97% |
| American Express [Travel Related Services Co.] | $ 2,406.33 | $ 2,755.33 | 87% |
| Bank of America [N.A.] | $ 6,200.00 | $ 6,698.41 | 93% |
| MBNA America (Claim filed by eCast Settlement Corp. (eCast) as assignee) | $ 10,300.00 | $ 10,837.06 | 95% |
| Nordstrom [FSB] | $ 940.13 | $ 958.92 | 98% |

  Attached to each of the above proofs of claim was an "account summary," setting out, among other things, the account number, Debtor's name, and the account balance as of the last "statement date" closest to the filing of the Chapter 13 petition. Several summaries indicated the last date payment was made on the account.

  In July, 2004, Debtor, through counsel, objected to the above claims on identical grounds, those being, that the claims did not include a copy of the writing upon which they were based and did not include an itemized statement of the account.[2] Debtor recommended that each of the above claims be <u>disallowed in full</u>.

  As is the normal procedure in this district, the creditors were notified that their claims would be allowed or disallowed according to Debtor's recommendation unless they requested a hearing within thirty-two (32) days of entry of the objection. Neither Bank of America nor Nordstrom FSB requested a hearing, as such their claims were disallowed.

  American Express Centurion Bank, American Express Travel Related Services Co., and eCast, however, jointly requested a hearing.[3] As to claim documentation, these creditors argued

---

[2] Debtor further objected to eCast's claim because it did not include a copy of the assignment upon which it was based. Also, Bank of America filed duplicate claims, (proof of claims ## 5 and 6), to which Debtor objected.

[3] As to the lack of documentation of eCast's assignment, eCast argued MBNA assigned to it before the proof of claim was filed. As such, FRBP 3001(e)(1) did not require that proof of the assignment be filed with the claim. In any event, eCast attached Exhibit D to the Request for Hearing,
(continued...)

the summaries attached to the proofs of claim were sufficient as evidence of the claims, noting Bankruptcy Form 10 (the Proof of Claim form) asks for a summary if the documents are voluminous. In any case, eCast and American Express Centurion Bank attached account statements confirming the balances claimed. American Express Travel Related Services Co. advised a statement concerning its claim would be supplied when available. The creditors argued the documentation was sufficient in light of Debtor's scheduling the vast majority (87%-97% ) of the claimed amounts as undisputed, liquidated and non-contingent. They argued the schedules constituted a judicial admission, which waived Debtor's right to contest the undisputed amount of their claims.

Before hearing, Debtor filed a twelve (12) page brief arguing that under FRBP 3001(c), claims must be supported by an account agreement and documents showing how the balance was calculated, including interest and late fees. He argued the documents attached to the proofs of claim and to the request for hearing did not meet this standard, that the required documents were not "voluminous," and that the failure to substantiate the claims meant that they should not be given *prima facie* validity. In reliance upon In Re Henry, 311 B.R. 813 (Bankr. W.D. Wash. 2004), Debtor argued evidence supporting the claims must be filed no later than the response to the Debtor's objection. Since this did not happen, the claims must be disallowed. He further argued the statements in the schedules were not binding upon him.

A preliminary hearing was convened on September 30, 2004. Mr. Anderson, on Debtor's behalf, argued the objections were based on lack of documentation and changing the official Proof of Claim form. He also argued eCast was not a creditor and that, in any event, Debtor disputed the amounts owing to the claimants. The Court set the matter over for an evidentiary hearing. On January 12, 2005, twelve (12) days before the final evidentiary hearing, Debtor withdrew his objections to the claims.

Discussion:

The standards for allowing compensation of an attorney for a Chapter 13 debtor are set out in 11 U.S.C. § 330(a)(4)(b)[4] which provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors[5] set forth in this section.[6]

---

[3](...continued)
evidencing the assignment and argued Debtor did not have standing to object to the transfer of the claim.

[4] Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code.

[5] The "other factors set forth in this section" are set out in § 330(a)(3)(A)

(continued...)

As noted above, the touchstone for allowing compensation is "reasonableness." See, In re Pedersen, 229 B.R. 445, 448 (Bankr. E.D. Cal. 1999) (compensation paid to a chapter 13 debtor's counsel must be reasonable considering the benefit to the debtor and the necessity of the services). Here, the fees that were disallowed were incurred in drafting objections to the full amount of the claims at issue, briefing the objections, and appearing at hearings thereon.[7] The question presented is whether those fees are reasonable when the debtor has scheduled 87%-97% of the claims at issue as undisputed, liquidated and non-contingent. The answer is no.

First, the majority of cases discussing this issue, have held a bankruptcy debtor's schedules may be considered judicial admissions, that is, they bind the debtor as to the facts alleged therein. See, e.g., Matter of Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995)(by listing creditors as holders of "fixed and liquidated" claim on his bankruptcy schedules, without qualifying that description to indicate that claim was "disputed," debtor waived right to contest existence of debt to creditors); see also, In Re Rolland, 317 B.R. 402 (Bankr. C.D. Cal. 2004); In Re Bohrer, 266 B.R. 200 (Bankr. N.D. Cal. 2001); In Re Kaskel, 269 B.R. 709 (Bankr. D. Id. 2001).

---

[5](...continued)
as follows:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The disqualifying factors set out in § 330(a)(4)(A) may also be implicated.

[6] Compensation under § 330(a)(4)(B) is treated as an administrative expense. § 503(b)(2).

[7] At the hearing, Mr. Garrick computed that the fees incurred for these activities totaled $4,626.00 of the applied-for $6,802.50. Mr. Anderson did not dispute this figure. As noted above, the Court allowed $2,500 of the applied-for fees, thus disallowing $4,302.50.

Messrs. Anderson & Garrick
July 15, 2005
Page-5

      Assuming, for argument's sake, that the creditors' claims could not be given *prima facie* effect under FRBP 3001(f) because they were not properly supported,[8] at hearing,[9] Debtor would have been precluded by his admissions from adducing contrary evidence.[10] At the least, Debtor's schedules would have been considered "evidentiary admissions," which would support the claims at the amounts scheduled.[11]

      Debtor relied on Henry, supra, to support the objections. In Henry, the court was faced with credit card type claims supported by account statements that are similar to the claims in this case. It held that such summaries were insufficient proof; that for the claims to be allowed, at a minimum, the creditor must file with its proof of claim (but in no event later than in response to a claims objection), certain underlying documents verifying the claim, including monthly account statements and a copy of the underlying agreement authorizing the charges. Id. at 817-818.[12] Each of the offending creditors was given an opportunity, however, to amend its claim

---

[8] This District's Local Bankruptcy Rule 3001-1.A.4 limits attachments to proofs of claim to five (5) pages, and provides that any tendered attachments in excess thereof will not be made a part of the court's official record. The Rule further provides that a copy of any required documentation must be provided to an interested party upon written request, and that in the event of a hearing on an objection to claim, the proof of claim and all original exhibits, attachments and supporting documentation shall be introduced at the hearing for possible admission to the official record.

[9] Under the holding of Ashford v. Consolidated Pioneer Mortgage (*In Re Consolidated Pioneer Mortgage*), 178 B.R. 222 (9th Cir. B.A.P. (S.D. Cal.) 1995), lack of documentation merely deprives the claim of *prima facie* effect. In this Court's view, it does not warrant a denial of the claim without a hearing.

[10] In Resurgent Capital Services v. Burnett *(In Re Burnett)*, 306 B.R. 313 (9th Cir. B.A.P. (D. Nev.) 2004), the Chapter 13 debtors likewise objected to the full amount of claims, where the schedules indicated either more undisputed liability or, like here, de minimis less undisputed liability, than the claims themselves. There the claimant was a transferee of the original creditors. Debtor's objection sought, among other things, "proof that the accounts were due and owing to the respective creditors in the first place." Id. at 315, n. 2. Although the central issue in the case was whether the transferee had to divulge the consideration paid for the transfer, the Court nonetheless took time to note, in *dicta,* that "it is likewise difficult to regard as meritorious the objection's assertions questioning the $3,204.79 total in the proof of claims in light of the debtors' admissions in their schedules that the debt on the three accounts was $3,765.33 and not in dispute." Id at 317, n.8.

[11] The Court does not mean to preclude a Debtor from timely amending his schedules to change the status of a debt from "undisputed" to "disputed," if done in good faith. Even in that instance however, the original schedules retain the force of "evidentiary" admissions. Kaskel, supra. Here, Debtor has not amended his schedules.

[12] Six months after Henry, in In re Vann, 321 B.R. 734 (Bankr.W.D.Wash. 2005), the court set out its requirements for the filing of a summary with the proof of claim if documentation of the claim is voluminous, adopting the standard set forth in In Re Cluff, 313 B.R. 323, 335 (Bankr. D. Utah 2004).

by submitting additional documentation.  <u>Id.</u>, In <u>In re Vann</u>, 321 B.R. 734 (Bankr. W.D. Wash. 2005), the same court again gave creditors an opportunity to file supplemental documentation.[13]

     Thus, it is questionable whether the <u>Henry/Vann</u> court would deny claims if supporting documentation was not presented with a request for hearing, without allowing time for amendment.  Even if it would, however, those requirements have never applied before this Court. Indeed, this Court's claims objection form (LBF 763.2), allows a creditor to obtain a hearing on a claims objection with a simple request.

     The claims process should not be allowed to devolve into a game of "gotcha", as was attempted here,[14] nor should a debtor's counsel be compensated as an administrative expense for

---

[13] Of note, <u>Henry</u> and <u>Vann</u> do not discuss the binding or evidentiary effect of a debtor scheduling a claim as undisputed, liquidated and non-contingent.  Further, the court later admonished participants in the claims process to stick to the bona fides of their underlying positions:

> While the attempt through *Henry* to simplify the small claims process before this Court appears to have failed, the Court has the continued expectation that both debtors and creditors will act reasonably in that process.  Creditors should be mindful that their claims are signed under penalty of criminal sanctions and should take seriously the requirement that they have sufficient proof of what is owed by a debtor and how that debt is calculated.  Debtors should file objections to claims <u>when they have a legitimate quarrel with the existence or amount of the debt and when the attorneys' fees to be incurred in the process do not exceed the amount of the dividend to be saved if the objections are successful.</u> (emphasis added).

<u>In Re Crowe</u>, 321 B.R. 729, 733-734 (Bankr. W.D. Wash. 2005).

[14] A <u>debtor's</u> claims objections (based on lack of documentation) in the face of scheduled undisputed liability, must be contrasted with a <u>trustee's</u> objections.  As stated by one court facing similar issues:

> As a final note, it is important to distinguish these Chapter 13 cases from Chapter 7 or 11 cases in which a trustee reviews a proof of claim asserting that the debtor owes a debt, but the claim does not attach documents supporting the claim.  Unless claims are already listed as disputed, unliquidated, or contingent on a debtor's statements and schedules, a Chapter 7 or 11 trustee must examine a debtor's books and records to determine which claims are truly owed and which claims are objectionable.  The Chapter 7 or 11 trustee is not privy to the personal history of the debtor and does not have first-hand knowledge of the debtor's debts.  <u>A mere formal objection from a Chapter 7 or 11 trustee does not raise the same issues of bad faith which may arise when a debtor, who has personal knowledge of a debt and who has admitted to</u>

(continued...)

his or her role in such a game, especially where doing so would reduce the dividend to general unsecured creditors.[15]

      This letter contains the Court's findings of fact and conclusions of law. They shall not be separately stated. An order consistent herewith shall be entered.

                              Very truly yours,

                              *albert E. Radcliffe*

                              ALBERT E. RADCLIFFE
                              Bankruptcy Judge

AER:vhd

---

[14](...continued)
        that debt, later objects to the undisputed claim based on a technicality
        (emphasis added).

In re Cluff, 313 B.R. 323, 343 (Bankr. D. Utah 2004).

[15] See, In re Schraner, 321 B.R. 738 (Bankr. W.D. Wash. 2005), a post-Henry decision, where the same court, when confronted with non-meritorious "blanket" claims objections based on lack of documentation, denied attorney's fees when allowance of the fees would reduce the dividend to unsecured creditors.